# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| SANDRA SONI, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| CROWDSTRIKE HOLDINGS, INC., | § § | Civil Action No. 1:19-cv-00969-LY |
| *Defendant*. | § § § | |

# DEFENDANT CROWDSTRIKE HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**I.      Introduction**

Plaintiff incorrectly argues that this motion may be granted only if she can "prove no set of facts" in support of her claim. Opp. ¶¶ 11 and 15 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The Supreme Court "retire[d]" this lax standard more than ten years ago because it would allow "a wholly conclusory statement of claim" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Today, the law requires dismissal under Rule 12(b)(6) of a complaint, like Plaintiff's, that fails to plead facts demonstrating a plausible entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. at 570. Under this standard, Plaintiff's complaint should be dismissed with prejudice because the uncontested facts show the Complaint does not, and cannot, state a claim for the simple reason that neither Plaintiff nor Mr. Soni exercised the stock options at issue within the contractually required and legally defined 90-day window after Mr. Soni's employment with CrowdStrike ended.

**II.     The Agreements are Not Ambiguous and Mr. Soni's Options Expired 90 Days After Termination of His Employment**

Given the uncontested fact that neither Mr. Soni nor Plaintiff exercised Mr. Soni's options within 90 days after his employment with CrowdStrike ended, Plaintiff argues that a 12-month expiration window applies because the definition of "termination" in the Stock Option Agreements is supposedly ambiguous. Opp. ¶¶ 17–20. But the stock option agreements are clear: an individual's employment is "terminated" when that individual is no longer employed by CrowdStrike, whatever the reason. The Stock Option Agreements provide former employees two possible windows for exercising their options:

- 12 months when termination of employment is due to death or disability, or
- 90 days when termination of employment is for any other reason.

Anderson Decl., Ex. A–D at 2.  Indeed, *by definition*, these two windows cover all possible ways an individual's employment may terminate—"This Option shall be exercisable for ninety (90) days after Participant's Termination with the Employer, ***unless such Termination is due to Participant's death or Disability***, in which case this Option shall be exercisable for twelve (12) months."  *Id*. (emphasis added).  Mr. Soni's Separation Agreement is also clear that his employment was terminated and specifically references an "employment ***termination*** date" of November 6, 2018.  Anderson Decl., Ex. F § 1 (emphasis added).

The Stock Option Agreements, including the termination periods, were carefully drafted to comply with the federal regulations governing employee incentive stock option plans.  *See* 26 C.F.R. § 1.421-1(h)(2) (person exercising option must be an employee or "a former employee within the 3-month period following termination of the employment relationship").  Because the applicable terms are clear and unambiguous, the Court may construe the Stock Option Agreements as a matter of law on a motion to dismiss.  *See OSI Sys. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006) (a dismissal on the pleadings "is a proper framework for enforcing unambiguous contracts.") (citation omitted).  The clear and unambiguous language of the Stock Option Agreements shows that Plaintiff's complaint must be dismissed.  Plaintiff does not allege that Mr. Soni's employment terminated due to death or disability (nor can she), so the 12-month period is inapplicable, and the 90-day period applies.  *See* ECF # 1, Ex. 7.  Plaintiff does not and cannot allege that the stock options were timely exercised under the 90-day catch-all window.  *See* Anderson Decl., Ex. F § 1 (Mr. Soni's employment with CrowdStrike terminated on November 6, 2018); ECF # 1, Ex. 7 ¶¶ 7–8 (Plaintiff admits that she tried to exercise options more than 90 days after Mr. Soni's employment terminated).

Plaintiff twists this clear contractual language and manufactures an ambiguity in the definition of "termination" where none exists. Opp. ¶¶ 17–20. Plaintiff proposes an unreasonably narrow definition from a free online law dictionary limiting "termination" to the "last step of employment where a worker is let go," *i.e.*, firing. Opp. ¶¶ 18–19.[1] But Plaintiff makes no attempt to reconcile her proposed, overly narrow definition of "termination" with the plain language of the Stock Option Agreements. Nor can she. First, "termination" in the Agreements refers to the termination of *employment* and not the termination of the *employee*. Rather, the plain and ordinary meaning of termination—"ends"—is the only definition that makes sense in this context and conforms to federal requirements for incentive stock options. *See* 26 C.F.R. § 1.421-1(h)(2) (optionee must be an employee or "a former employee within the 3-month period following *termination of the employment relationship*") (emphasis added). Second, Plaintiff's overly restrictive interpretation of termination conflicts with the plain language of the Stock Option Agreements, which broadly state that the 90-day exercise window applies in *every case* of "termination with the Employer **unless** such Termination is due to Participant's death or Disability" as described above. *See* Anderson Decl., Ex. A–D at 2. Plaintiff's interpretation therefore cannot be correct.

The error of Plaintiff's argument is underscored by language in the Stock Option Agreements contemplating termination "due to Participant's death or Disability." *See*, Anderson Decl., Exs. A–D at 2. Adopting Plaintiff's narrow interpretation of "termination" would lead to the unreasonable conclusion that the 12-month window to exercise options would apply only when

---

[1] The *published* Black's Law Dictionary definition of "terminate" is broader: "1. To put an end to; to bring to an end. 2. To end; to conclude." Black's Law Dictionary at 1511 (2004). "Termination of employment" is defined as "[t]he complete severance of an employer-employee relationship." *Id*. Plaintiff ignores these far more common definitions.

CrowdStrike "fires" someone due to *death*. This makes no sense. *See Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) (contracts must be read in a manner "that is reasonable and that harmonizes the affected contract provisions."). Because the agreements are unambiguous and Plaintiff's proposed interpretation is unreasonable, the Court should dismiss the complaint. *See DeGregorio v. Marriott Int'l, Inc.*, No. N18C-02-008 RRC, 2018 WL 3096627, at *13 (Del. Super. Ct. June 20, 2018) (granting motion to dismiss, holding that ambiguity requires agreement to be reasonably susceptible to multiple interpretations and courts "will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty").

Plaintiff also argues that the "Expiration Date" provided on the first page of each Stock Option Agreement conflicts with the 90-day exercise window from the date of termination. Opp. ¶ 22. But the "Expiration Date" in each agreement is the *latest* possible expiration date for employees; that date is modified for individuals whose employment is terminated:

> This Option shall be exercisable for ninety (90) days after Participant's Termination with the Employer, unless such Termination is due to Participant's death or Disability, in which case this Option shall be exercisable for twelve (12) months after Participant's Termination with the Employer. **Notwithstanding the foregoing sentence, in no event may this Option be exercised after the Expiration Date as provided above** . . . .

*See, e.g.*, Anderson Decl., Ex. A at 1–2 (emphasis added). There is no conflict because the 90-day window and the Expiration Date operate independently—the stock options are not exercisable after *either* date has passed. Here, the Expiration Date is not applicable because the stock options had already expired 90 days after Mr. Soni's employment terminated.

Nor do the "Grant of Option" and "Right to Exercise" provisions of the individual stock option agreements somehow create ambiguity (Opp. ¶ 22), because those provisions (a) do not specify the applicable termination period and (b) state that the options may be exercised only

*subject to the other terms of the agreements*, which includes the term that set the 90-day deadline. *See, e.g.*, Anderson Decl., Ex. A §§ 1 and 2(a).

Plaintiff's next contention—that the termination provisions in the individual Stock Option Agreements and the Incentive Plan contradict one another (Opp. ¶ 23)—is wrong. First, there can be no conflict because the termination period is set by the Stock Option Agreements, not the Incentive Plan. Anderson Decl., Ex. E § 5(g) (the Incentive Plan exercise periods apply "[e]xcept as may otherwise be provided in an Option Agreement"). Here, the Stock Option Agreements provide the exercise periods, as explained above, and thus control. Second, there is no conflict between the termination provision of the Incentive Plan and the Stock Option Agreements because both provide a 90-day exercise window when an employee is terminated for any reason other than for cause or due to death or disability. *See id.*, Exs. A–D at 2, Ex. E § 5(g). The only difference between the termination provisions of the Stock Option Agreements and the Incentive Plan is that the Incentive Plan provides that options immediately expire when an employee is terminated for cause. *See id.* § 5(g)(iii). But, here, Plaintiff and Defendant both agree that Mr. Soni was not terminated for cause, so this difference is irrelevant. *See* Opp. ¶ 19 ("[I]t is an undisputed fact that Stephen was not fired.").

Finally, Plaintiff's purported claim under section 21(e) of the Incentive Plan, which provides for payment to a Participant's estate where the Participant has died (Opp. ¶ 24) is inapplicable here. Section 21(e) only applies to "any payment due" to the estate and there was no payment due here after the options expired. Anderson Decl., Ex. E § 21(e). Contrary to Plaintiff's argument (Opp. ¶ 24), there is no requirement in the Incentive Plan that CrowdStrike consider, deny, or invoke section 21(e), much less a requirement that CrowdStrike provide documentation. *See* Anderson Decl., Ex. E § 21(e).

There is no ambiguity here and Plaintiff's claims can be dismissed under the plain language of the relevant agreements.

### III. Plaintiff's Assertion that Timely Exercising Was Impossible Is Wrong and Cannot Justify Rewriting the Agreements

Plaintiff's argument that it was "legally impossible" for anyone to exercise the options within the 90-day window is incorrect. *See* Opp. ¶ 16. Mr. Soni knew of—but did not exercise—the specific options at issue. Mr. Soni possessed options that started vesting as early as January 25, 2016. *See* Anderson Decl., Ex. A at 1. When Mr. Soni's employment with CrowdStrike terminated on November 6, 2018, he confirmed in writing that he understood his options would stop vesting, that any remaining vested but unexercised options would expire after 90 days, and that CrowdStrike had no obligation to remind him. *See id.*, Ex. F §§ 1 and 3. Mr. Soni could have, but did not, exercise his remaining options before passing away. Although CrowdStrike is sympathetic to Mr. Soni's tragic death, neither CrowdStrike nor this Court may rewrite the 90-day expiration provision, even if its application in this situation may seem unfair or unjust. Opp. ¶ 16; *see* 26 C.F.R. § 1.422-1(a)(1)(i)(B), (a)(3) (mandating that incentive stock options expire 90 days after termination of employment or 1 year if employment ceased because of permanent and total disability). CrowdStrike had no legal duty or authority to allow Plaintiff to exercise expired options.

### IV. The Cases Cited by Plaintiff Do Not Support a Claim Based on Expired Options

The cases cited by Plaintiff supposedly allowing a breach of contract claim pertaining to expired stock options do not apply. *See* Opp. ¶ 27. Those cases all address valuation of stock options to calculate damages for a *wrongfully terminated* employee who was prevented from exercising the stock options by the employer. *Scully v. US WATS, Inc.*, 238 F.3d 497, 507–15 (3d Cir. 2001) (affirming calculation of damages for wrongfully terminated employee that included

value of stock options); *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 906–08 (5th Cir. 1975) (reversing judgment that denied wrongfully terminated employee the value of stock options as damages); *Moran v. DaVita Inc.*, 441 F. App'x 942, 947–48 (3d Cir. 2011) (remanding discrimination and retaliation case to value stock options as damages). These cases do not apply because Plaintiff does not allege that Mr. Soni was wrongfully terminated, much less that a wrongful termination frustrated an attempt to exercise the options.

Instead, *Preece v. Physicians Surgical Care, Inv.*, No. H-06-0715, 2006 WL 1470268 (S.D. Tex. May. 26, 2006) is directly on point, and Plaintiff's attempted distinctions (Opp. ¶ 28) miss the mark. <u>First</u>, nothing has changed in the thirteen years since *Preece* was decided, and Plaintiff cites no decision overturning or even criticizing *Preece*. <u>Second</u>, as shown above, the agreements here are unambiguous, just like those in *Preece,* and warrant dismissal of Plaintiff's complaint, just as in *Preece*. <u>Third</u>, federal law establishes the standards for Rule 12(b)(6) dismissal, and even if *Preece* applied Texas law to interpreting the contract, Plaintiff cites no law showing a different result under Delaware law. *Preece* makes clear that dismissal is warranted here because a complaint alleging that a plaintiff attempted to exercise expired stock options does not show a plausible entitlement to relief.

## V.     The Court Can Consider the Separation Agreement

Plaintiff argues, incorrectly, that the Court should not consider the Separation Agreement because "[t]he premise for which the agreement is offered is disputed." Opp. ¶ 29. Plaintiff herself relies on the Separation Agreement. *Id.* ¶ 19 ("There was a separation agreement entered by the parties and there was no firing of Stephen."). A court may consider documents attached to a motion to dismiss that are central to the claim and referenced by the complaint. *See Schaffer v. U.S. Bank Tr., N.A.*, No. 1:17-cv-297-RP, 2017 WL 6029646, at *6 (W.D. Tex. Dec. 5, 2017). The

Court may, and should, construe the unambiguous Separation Agreement, as a matter of law on a motion to dismiss.  *See OSI Sys.*, 892 A.2d at 1090.

Plaintiff also argues that the Separation Agreement is hearsay.  Opp. ¶ 30.  This argument is incorrect.  "Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay."  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (citation omitted); *see also Mason v. Regions Bank*, No. 1:16-CV-1299-RP, 2017 WL 10742443, at *2 (W.D. Tex. July 18, 2017).

Moreover, Plaintiff's claims fail even without considering the Separation Agreement. Plaintiff admits that Mr. Soni's employment terminated by separation.  Opp. ¶ 19.  Plaintiff never alleges that she attempted to exercise the options within 90 days of Mr. Soni's separation date. *See* ECF # 1, Ex. 7.  Plaintiff admits that she tried to exercise the stock options after she was appointed as administrator of Mr. Soni's estate on April 19, 2019—long after the 90-day window expired.  *Id.* ¶¶ 7–8.  Plaintiff's own allegations show that her attempt to exercise the options was untimely, even without considering the Separation Agreement.

## VI.   Plaintiff's Complaint Should Be Dismissed with Prejudice

Plaintiff's contract claim is futile, and no amendment can cure its deficiency.  Plaintiff's Opposition makes no attempt to defend her remaining claims for *quantum meruit*, promissory estoppel, declaratory judgment, or attorneys' fees.  Accordingly, dismissal of Plaintiff's entire complaint should be with prejudice.  *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)) (Courts may dismiss with prejudice where amendment would be futile).

- 9 -

Dated: October 31, 2019                                 Respectfully submitted,

/s/ Ryan Tyz
Christopher L. Elliott
GRAVES DOUGHERTY HEARON & MOODY
401 Congress Avenue, Suite 2700
Austin, TX 78701
Tel.: (512) 480-5720

Ryan Tyz (*pro hac vice*)
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone:   415.849.3578

*Attorneys for CrowdStrike Holdings, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served on October 31, 2019 on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Ryan Tyz*
Ryan Tyz