## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Sandra Soni, Independent Administrator with Will Annexed of the Estate of Stephen Soni,** | § § § | |
| ***Plaintiff,*** | § § | |
| **v.** | § § § | **Civil Action No. <u>1:19-cv-00969-LY</u>** |
| **CrowdStrike Holdings, Inc.** | § § | |
| ***Defendant.*** | § | |

### PLAINTIFF SANDRA SONI, INDEPENDENT ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF STEPHEN SONI'S FIRST AMENDED COMPLAINT

Plaintiff Sandra Soni, Independent Administrator with Will Annexed of the Estate of Stephen Charles Soni (the "Plaintiff"), files this First Amended Complaint complaining of the actions of Defendant Crowdstrike Holdings, Inc. (the "Defendant") and in support thereof, would show the Court the following:

## I.
### <u>DISCOVERY AND MONETARY RELIEF SOUGHT</u>

1.     Discovery shall be conducted under Level 2. Pursuant to Tex. R. Civ. P. 47 (c), Plaintiff seeks monetary relief of more than $200,000, but less than $1,000,000.

## II.
### <u>PARTIES</u>

2.     Plaintiff Sandra Soni is the duly appointed Independent Administrator with Will Annexed of the Estate of Stephen Charles Soni (the "Decedent"). Plaintiff resides in Stark County, Ohio however Plaintiff has appointed Abraham Kant as her resident agent.

3.      Crowdstrike Holdings, Inc., is a Foreign For-Profit Corporation authorized and doing business in the state of Texas and has appeared in this action through counsel of record.

### III.
### JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter based upon Federal Diversity jurisdiction and the removal of this action by the Defendant.  Venue is proper in the Western District as this is the Court the matter was removed to.

### IV.
### FACTS COMMON TO ALL COUNTS

5.      Decedent was a high-ranking employee with the Defendant for many years. While employed by the Defendant, Decedent was given numerous stock options, all memorialized in stock option agreements.  Prior to his passing, Decedent never missed one opportunity to exercise the stock options granted to him and never let a single option lapse.

6.      Tragically, Decedent took his own life on or about November 17, 2018.  After his death, the Plaintiff (Decedent's mother) undertook to handle the affairs of his estate.  At the time of his death, Decedent was not married or in a committed relationship and he left a holographic will giving everything to his mother.  The death and handling of the estate was very difficult on Plaintiff as she was and is still attempting to deal with the tragic loss of her son and all the aftermath of the death.

7.      One of the first actions the Plaintiff took was to reach out to Defendant following Decedent's suicide. In response, the Defendant contacted Sandra's attorneys (the undersigned firm).   This contact occurred on or about December 11, 2018. During that contact, the Defendant's representative, Josh Winans, expressed condolences, stated that Stephen was a "cherished member" of the Defendant, that Decedent trained many employees, Decedent was

valued and that the company and employees wanted to assemble and send a care package to Sandra.  However, patently missing from this communication was any discussion or indication about the existence of or timing required to exercise outstanding stock option agreements.  If the Defendant would have identified the stock options (or its alleged 90-day window to exercise), the Plaintiff would have, without question, exercised such options within the 90 days.

8.      The Plaintiff continued diligently pursuing Decedent's probate matters in Austin. To this end, the Plaintiff encountered the following obstacles: the Plaintiff had to be appointed as the Independent Administrator of the estate; the Plaintiff had to gain access to Decedent's residence and electronically stored information (all of which were password protected); the law enforcement's investigation into the death of Decedent; the administration of an unwitnessed holographic will; and piecing together the Decedent's financial life (bank accounts, financial accounts and determining any further agreements with the Defendant).  The Plaintiff was finally appointed as Independent Administrator on April 18, 2019.

9.      After many months, the Plaintiff heard from the Defendant again on May 29, 2019.  At that time, Josh Winans, Defendant's representative notified Sandra's attorneys about Stephen's stock "purchase options."  Mr. Winans requested information about Decedent's heirs and who issued stock should be sent to.  There was absolutely no mention of the unexercised stock option agreements in Decedent's name.  Immediately, the Plaintiff started investigating the existence of stock option agreements (the "agreements") and finally obtained copies from Fidelity Investments.

10.     Why didn't the Defendant disclose these to the Plaintiff?  The answer is simple - the Defendant wanted to deny Decedent's estate and his beneficiaries those stock options

Decedent had rightfully acquired through his employment.  This withholding only benefited the Defendant by keeping valuable, publicly traded stock within its treasury coffers.

11.     The Plaintiff was appalled that the Defendant was aware of Decedent's death for months and intentionally failed to inform her about the unexercised stock options.  As soon as she was aware of the stock options, the Plaintiff exercised them.  The Defendant's response: because Decedent did not redeem them in 90 days after he "left" the company (at time when he was deceased and no estate existed), the shares could not be exercised by the estate.

12.     However, based upon the stock option agreements, the estate absolutely has the right to exercise the options.  There are multiple reasons, including the fact the 90 day time frame relied upon by the Defendant is inapplicable, the application of the 90 day time frame would be an unjust and unfair result, the stock option agreements are ambiguous and must be interpreted in Decedent's favor, and a twelve (12) month exercise window exists because of Decedent's disability.

13.     With regard to the disability, the stock option agreements specifically allow for extended time to exercise when a disability was involved.  The 2011 Stock Incentive Plan defines disability as:

> (m) "Disability" means, in the absence of an Award Agreement or Participant Agreement otherwise defining Disability, the permanent and total disability of such Participant within the meaning of Section 22(e)(3) of the [Internal Revenue] Code.

Further, Section 22 of the Internal Revenue Code defines "disability" as someone who is:

> "…unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…"

26 U.S.C.A. § 22(e)(3).

14.     Here, it is apparent the Decedent was disabled.  He committed suicide just eleven days after the last day Decedent worked for the Defendant.  Without question, Decedent's employment ceased at a time he was suffering a debilitating mental impairment which was not only "expected" but actually resulted in his death.  This impairment prevented him from engaging in substantial gainful activity, including without limitation, working for the Defendant.  As a result of his disability, the Decedent (through his duly appointed personal representative) had the full right and power to exercise these options up to twelve (12) months after leaving the Defendant's employ.

15.     Based upon the foregoing, the Plaintiff asserts the claims set forth below to exercise and enforce the stock option agreements in Decedent's name.

## V.
## CAUSES OF ACTION

### A.     Claim One:  Breach of Contract

16.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth verbatim.

17.     Decedent and the Defendant entered into valid and enforceable contracts, the stock option agreements.  Defendant breached the terms of the agreements by failing to distribute all amounts due, owing and to which Decedent was entitled. Defendant's actions constitute a breach of contract and are wholly without excuse.

18.     As a result of Defendant's breach, the Plaintiff suffered damages, the full amount of which will be determined by the trier of fact.

### B.     Claim Two: Quantum Meruit

19.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth verbatim.

14.    In the alternative to Count 1, Defendant accepted services from Decedent without compensating him. Specifically, Decedent performed valuable services for Defendant in his employment of which Defendant enjoyed the benefits. Decedent was notified and expected to receive compensation including the stock options at issue. Defendant refused to issue the stock options to the lawful representative of Decedent's estates and unlawfully retained the stocks to Plaintiff and Decedent's detriment.

15.    As a result of Defendant's actions, the Plaintiff suffered damages, the full amount of which will be determined by the trier of fact.

**C.    Claim Three: Promissory Estoppel**

16.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth verbatim.

17.    In the alternative to Count 1, Defendant made a promise to Decedent that Defendant did not keep. Defendant promised to Decedent, as a benefit to his hard work and employment with Defendant, Decedent would receive the stock options at issue. Decedent acted and relied upon this promise.  Defendant now refuses to issue the promised stock options.

18.    As a result of Defendant's actions, the Plaintiff suffered damages, the full amount of which will be determined by the trier of fact.

**D.    Claim Four: Declaratory Judgment**

19.    Plaintiff requests a declaration under TEX. CIV. PRAC. & REM. CODE ANN. §37.001 et. seq., that: (1) Decedent Stephen Charles Soni is entitled to the underlying stock options; (2) Plaintiff, as Administrator of the Estate of Stephen Charles Soni, is entitled to collect the underlying stock options on behalf of the Estate Stephen Charles Soni.

**E.**     **Claim Five:  Request for Attorneys' Fee**

20.     The Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth verbatim.

21.     Plaintiff was required to retain the services of the undersigned counsel in order to initiate this action.   As such, Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to applicable Texas law, plus additional attorneys' fees in the event of an appeal.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear herein and answer, and that upon final trial, that the Plaintiff have judgment against the Defendant for the following:

(a)     actual damages;

(b)     declaratory judgment as requested above;

(b)     pre- and post- judgment interest at the maximum permissible rate, at law or in equity;

(c)     reasonable attorneys' fees;

(d)     costs of court; and

(e)     all other relief, in law and in equity, to which she may be entitled.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON, MCGARR,
KAMINSKI & SHIRLEY, LLP
4330 Gaines Ranch Loop, Suite 150
Austin, TX 78735
Tel: (512) 347-1604
Fax: (512) 347-1676

By: _____

    Abraham Kant
    State Bar No. 24075803
    akant@ssjmlaw.com
    David A. Buono II
    State Bar No. 24001806
    david@ssjmlaw.com
    Evan A. Johnston
    State Bar No. 24084283
    evan@ssjmlaw.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 13th day of March, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification to all counsel of record.

Christopher L. Elliott
Peter D. Kennedy
GRAVES DOUGHERTY HEARON & MOODY
401 Congress Avenue, Suite 2700
Austin, Texas 78701

Ryan Tyz
Tyz Law Group PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
**ATTORNEYS FOR CROWDSTRIKE HOLDINGS, INC.**

_____
Abraham Kant

-8-