IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SANDRA SONI, INDEPENDENT ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF STEPHEN SONI, | § § § § § | |
| Plaintiff, | § | A-19-CV-969-LY |
| V. | § § | |
| CROWDSTRIKE HOLDINGS, INC., | § § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court is Defendant CrowdStrike's Motion to Dismiss Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) (Dkt. #44).[1] After reviewing the pleadings, the relevant case law, the entire case file, and finding a hearing not necessary, the undersigned issues the following Report and Recommendation to the District Court.

**I.   BACKGROUND**

Plaintiff Sandra Soni ("Soni") is the Independent Administrator with Will Annexed of the Estate of Stephen Charles Soni ("Decedent"). Dkt. #41 ("Second Amd. Compl." or "SAC") at ¶ 2. Decedent was a high-ranking employee with CrowdStrike Holdings, Inc. ("CrowdStrike"), who took his own life on or about November 17, 2018. *Id.* at ¶ 5. Following Decedent's death, Soni interacted with CrowdStrike's representatives on multiple occasions. On December 11, 2018,

---

[1] The motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

CrowdStrike's representative expressed condolences for Soni's loss but did not inform Soni about any outstanding, unexercised stock options available to Decedent. *Id.* at ¶ 8. Soni was appointed as Independent Administrator of the estate on April 18, 2019. *Id.* at ¶ 9. On May 29, 2019, CrowdStrike's representative notified Soni about Decedent's stock purchase options but did not discuss the unexercised stock options in Decedent's name. *Id.* at ¶ 10. Soni began investigating Decedent's stock options after this conversation and obtained copies of the stock options from Fidelity Investments. *Id.* Once Soni discovered that Decedent had unexercised stock options, Soni attempted to exercise them, but CrowdStrike responded that the stock options could not be exercised because they were not redeemed within 90 days after Decedent's employment with CrowdStrike ended. *Id.* at ¶ 12.

Soni contends that Decedent's employment terminated due to his mental health disability and therefore the Stock Options Agreements' 90-day window to exercise the stock options is inapplicable and the 12-month window, which applies when employment is terminated due to death or disability, controls. *Id.* at ¶ 18. Soni asserts claims for breach of contract, *quantum meruit*, promissory estoppel, declaratory judgment, and attorneys' fees.

CrowdStrike previously moved to dismiss Soni's claims. The undersigned recommended her breach of contract claim be dismissed because she had failed to plead facts that plausibly supported her claim that Decedent's employment terminated due to his disability. The undersigned further recommended her *quantum meruit* and promissory estoppel claims be dismissed because equitable remedies cannot be used to enforce contractual rights. The undersigned recommended that her declaratory judgment claim be dismissed because it survives or fails with her breach of contract claim. Finally, the undersigned recommended her attorneys' fees claim be dismissed

2

because she failed to respond to CrowdStrike's motion on that issue. Upon her representation that she could plead additional facts to support her claims, the District Judge allowed her to do so.

In her Second Amended Complaint, Soni asserts the same claims but has added more facts to support her contention that Decedent's employment terminated due to a mental health disability. CrowdStrike again moved to dismiss. The parties' briefing focuses on Soni's breach of contract claims, but CrowdStrike also seeks to dismiss Soni's *quantum meriut*, promissory estoppel, and attorneys' fees claims based on the reasons in the previous Report and Recommendation.

## II.   STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to

3

legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss, a court may "rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation omitted); *see also Carter v. Target Corp.*, 541 F. App'x 413, 416 (5th Cir. 2013) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"). The court may likewise take judicial notice of matters of public record, such as documents filed in the county property records. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

### III. ANALYSIS

#### A. Breach of Contract Claim

Decedent's Stock Option Agreements provided a 90-day window to exercise any stock options after employment terminated but applied a 12-month window when employment

4

terminated due to death or disability.[2] The applicable Stock Incentive Plain defined "disability" as:

> (m) "Disability" means, in the absence of an Award Agreement or Participant Agreement otherwise defining Disability, the permanent and total disability of such Participant within the meaning of Section 22(e)(3) of the [Internal Revenue] Code.
>
> Further, Section 22 of the Internal Revenue Code defines "disability" as someone who is:
>
> "…unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…"
>
> 26 U.S.C.A. § 22(e)(3).

SAC at ¶ 19. It is undisputed that Decedent voluntarily terminated his employment with CrowdStrike. *See id.* at ¶ 13 ("Decedent stepped down from his position at CrowdStrike due to his mental impairment"). The parties dispute whether Soni pleaded facts that plausibly support her claim that Decedent's employment terminated due to a disability.

In her Second Amended Complaint, Soni includes a hand-written note by Decedent indicating he ended his employment with CrowdStrike due to his mental health. *Id.* at ¶ 14, Exh. A, A-1. Decedent's suicide note states "[T]here is something wrong w/ my brain—my memory has gone bad. I have tried to resolve this with doctors—they have not helped." *Id.* at ¶ 15, Exh. A-2. Soni also pleads that a month before Decedent resigned from CrowdStrike, he was hospitalized for a panic attack. *Id.* at ¶ 16, Exh. B. Two days later, he saw his primary care physician who noted, "[Decedent] believes that this is work related and feels like he is [sic] quick sand." *Id.* at ¶ 16, Exh. C. Two days after his employment ended, Decedent sought further psychiatric help and reported a two-month history of low motivation, depressed mood,

---

[2] Soni refers to, but does not quote, this provision her Second Amended Complaint. CrowdStrike does quote this provision in its motion. The relevant Agreements were submitted with CrowdStrike's original briefing and referred to in this briefing. This language is not disputed.

5

hyperinsomnia, racing thoughts, a 25-pound weight loss, and suicidal ideation. *Id.* at ¶ 16, Exh. D. The provider noted Decedent had resigned two days prior, had been "under much pressure" and "had become unable to keep up with the workload." *Id.* Decedent was then diagnosed with bipolar disorder. *Id.*

Soni also describes the impressions of two individuals close to Decedent and attaches their affidavits to her Second Amended Complaint. *Id.* at ¶ 17. Decedent's cousin recounted Decedent's stress, the pressures placed on him by CrowdStrike, and Decedent's concerns about returning to work after a leave of absence. *Id*. Decedent communicated to this cousin about being mentally unwell and receiving mental health treatment. *Id.* This cousin observed Decedent's mental health deteriorating and was concerned about his ability to make basic decisions. *Id.*

Soni describes the impression of a close friend, who recounts Decedent describing his mental illness as far back as August 2018. *Id.* at ¶ 17, Exh. F. A month before his death, Decedent described to her that he was not sleeping and suffered memory loss, and she observed he "looked like another person." *Id.* Days before he died, she recalled his mental breakdown, paranoia about CrowdStrike, and his expression that he had a mental disorder. *Id.* She described that when he left CrowdStrike, he had no exit strategy, place to live or other job lined up. *Id*.

CrowdStrike argues these facts do not suggest Decedent was unable to engage in any substantial gainful activity, as opposed to just his position at CrowdStrike, when his employment terminated. CrowdStrike also argues that these facts do not suggest Decedent had an impairment that was expected to result in death or continuously last for 12 months or more. CrowdStrike further argues Soni cannot show that Decedent's employment ended "due to" disability. CrowdStrike contends "[a]ll of the new allegations are more consistent with [Decedent] voluntarily resigning because the job was too stressful for him, not that it terminated because he was

permanently disabled. . . . Indeed, the Complaint concedes he 'stepped down' from his job, ECF 41 ¶¶ 13, 14, and the new documentation Plaintiff submitted reaffirms the conclusion that Mr. Soni voluntarily resigned." Dkt. #44 at 15-16.

As CrowdStrike's arguments go more to the merits of Soni's breach of contract claim than whether she has plausibly pleaded her claim, the undersigned will not address each argument. As noted above, the allegations or evidence support that Decedent was struggling with his mental health when he terminated his employment and those struggles were the reason he resigned. In addition, the evidence attached to Soni's Second Amended Complaint includes allegations that the Decedent disclosed he was severely depressed in August 2018, he was increasingly paranoid, in addition to his bipolar diagnosis he believed he had schizophrenia and was hearing voices, Dkt. #41-9; he worried he had a brain tumor, Dkt. #41-8, Dkt. #41-7; he was extremely fearful in an ungrounded way, Dkt. #41-7; he had a personal history of substance abuse and a family history of mental illness and suicide, *id.*; and "this year ended a one year period of increased energy and optimism,[3] decreased need for sleep, increased libido, and gregariousness," *id.*; and a two month history of "low motivation, depressed mood, hypersomnia, racing thoughts, appetite loss with a 25 lb weight loss, and some suicidal ideation," *id.*; and he was "almost delusional," *id.*

These allegations—particularly his paranoia, his hearing voices, and his almost delusional thinking—support a plausible claim that Decedent was suffering from a mental illness at the time of his termination that rendered him unable to engage in any substantial gainful activity. CrowdStrike's reliance on Decedent's treatment providers' failures to recognize the severity of his illness as indicative that he was not suffering from a mental impairment that could be expected to

---

[3] CrowdStrike cites this to indicate that his mental impairment had not lasted for a year, but bipolar disorder is characterized by periods of mania and depression.

result in death or last not less than 12 months is misplaced. Clearly, they misjudged the severity or trajectory of his illness.

CrowdStrike's reliance on the undersigned's previous rejection of Soni's argument—that because Decedent committed suicide, he must have been disabled at his termination—is also misplaced. The undersigned's previous determination was based on the fact that Soni had pleaded no facts supporting her claim that Decedent's mental illness predated his termination. In contrast, Soni's Second Amended Complaint pleads plausible facts that Decedent was suffering from mental illness before his termination. Further, the Decedent's handwritten note indicates Decedent stepped down because of his mental health.

Finally, CrowdStrike argues that allowing claims of termination due to disability after the stock options period expire would place CrowdStrike in an untenable situation. CrowdStrike contends that "[w]ithout notice of Mr. Soni's alleged permanent and total disability when his employment terminated, there was no basis for CrowdStrike to hold his options beyond that time and they therefore expired under the standard ninety-day window. Holding otherwise would put CrowdStrike, and every other company, in an impossible position and cannot be the right result." Dkt. #44 at 18. CrowdStrike's "the sky is falling" argument is unpersuasive. Both sides are bound by the terms of the Stock Option Agreements. CrowdStrike's reliance on the Separation Agreement also does not support its position. The undersigned already rejected a nearly identical argument:

> CrowdStrike's position is not supported by the Separation Agreement. The Separation Agreement does not provide any information as to why Decedent's employment ended. Dkt. #9- 1 at 87-92. CrowdStrike is correct that Decedent released certain claims against CrowdStrike, but such a release does not mean that no such claim or basis for such a claim existed. Additionally, the Separation Agreement states that stock options would continue to be governed by the terms of the applicable Stock Option Agreements. Dkt. #9-1 at ¶ 3. Accordingly, the Separation Agreement does not render Soni's claim futile.

Dkt. #36 at 8. Notably, the Separation Agreement does not require an attestation that Decedent's employment did not end due to disability. CrowdStrike's reliance on 26 U.S.C. § 22(e)(3) requiring proof of a disability is also unavailing. The undersigned is not holding that proof of disability is not required to utilize the 12-month window, but CrowdStrike appears to demand that proof of disability be provided at the time of termination without citing any contractual or statutory support.

Accordingly, the undersigned finds Soni has stated a plausible claim that CrowdStrike breached its contract by not allowing her to exercise Decedent's stock options during the 12-month disability window. As Soni's declaratory judgment claim stands or falls with the breach of contract claim, the undersigned will recommend that CrowdStrike's motion be denied as to those claims.

### B. *Quantum Meruit* and Promissory Estoppel Claims

CrowdStrike relies on the court's previous Report and Recommendation and the District Court's Order adopting in part to argue Soni's *quantum meriut* and promissory estoppel claims fail. In response, Soni argues these claims are adequately pleaded. Soni's response does not address the undersigned's previous finding that those claims cannot be asserted when a valid contract controls the parties' relationship.

*Quantum meruit* is a quasi-contractual remedy that allows a party, in the absence of an express agreement, to recover the reasonable value of his or her materials or services. *Greenberg v. Thomas Edison Charter Sch.*, No. CIV.A. CPU4-11003483, 2011 WL 6210632, at *2 (Del. Com. Pl. Nov. 21, 2011); *Sw. Bell Tel. Co. v. Fitch*, 643 F. Supp. 2d 902, 911 (S.D. Tex. 2009). To state a claim upon which relief can be granted for *quantum meruit*, a plaintiff must establish that (1) plaintiff performed the services with the expectation that the defendant would pay for those services; (2) that the services were performed by the plaintiff, absent a promise to pay; and (3) the circumstances were such that defendant should have known that plaintiff expected to be paid.

*Greenberg*, 2011 WL 6210632, at *2. If there is an enforceable contract between the parties, then *quantum meruit* recovery is inapplicable. *Id*. Promissory estoppel is an alternative to a breach of contract claim and requires (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment. *Carrillo v. Bank of Am., N.A.*, No. CIV.A. H-12-3096, 2013 WL 1558320, at *8 (S.D. Tex. Apr. 11, 2013) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)); *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003). These claims can be asserted as alternative bases of relief to a breach of contract claim and are often allowed to go forward when there some question as to whether a valid contract was formed or when it would be inequitable to enforce contract terms as written. *See Greenberg*, 2011 WL 6210632, at *2; *Carrillo*, 2013 WL 1558320, at *8; *Fitch*, 643 F. Supp. 2d at 911 ("Although a party 'generally cannot recover under *quantum meruit* when there is a valid contract covering the services or materials furnished,' the party 'may, however, seek alternative relief under both contract and quasi-contract theories.'"); *Berry v. CitiMortgage, Inc.*, No. 4:14-CV-459, 2015 WL 604983, at *3 (E.D. Tex. Feb. 12, 2015); *Chrysler Corp. (Delaware)*, 822 A.2d at 1031.

Both Soni's *quantum meriut* and promissory estoppel claims center on her ability to exercise Decedent's stock options after his death, per the terms of the Stock Option Agreements. *See* SAC at ¶¶ 26-28 ("Decedent was notified and expected to receive compensation including the stock options at issue. Defendant refused to issue the stock options to the lawful representative of Decedent's estates and unlawfully retained the stocks to Plaintiff and Decedent's detriment.)," ¶¶ 29-31 ("Defendant promised to Decedent, as a benefit to his hard work and employment with Defendant, Decedent would receive the stock options at issue. Decedent acted and relied upon this promise. The Defendant now refuses to issue the promised stock options."). Soni does not

challenge the validity of the Stock Option Agreements, and she makes no allegation that Decedent was entitled to stock options based on promises outside of the Stock Option Agreements. Soni's claims are based on her contention that Decedent, or she on his behalf, was entitled under the Stock Option Agreements to exercise the stock options up to twelve months after he left CrowdStrike. As the rights to exercise the stock options are entirely governed by the Stock Option Agreements, promissory estoppel and *quantum meriut* claims are not appropriate to enforce these contractual rights. Accordingly, the undersigned will recommend these claims be dismissed with prejudice.

## C. Attorneys' Fees

CrowdStrike again argues Soni seeks attorneys' fees under Texas law, which does not apply here. Soni did not respond to CrowdStrike's argument and has thus waived her attorneys' fees claim, even if her other claims were allowed to survive.

## IV. LEAVE TO AMEND

Alternatively, Soni seeks leave to amend if the court grants CrowdStrike's motion. Because the undersigned is recommending that her promissory estoppel, quantum meriut, and attorneys' fees claims be dismissed on legal grounds and not on the basis of inadequate pleadings, the undersigned recommends she be denied leave to amend.

## V. RECOMMENDATIONS

For the reasons given above, the court **RECOMMENDS** that Defendant CrowdStrike's Motion to Dismiss Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) (Dkt. #44) be **GRANTED in part and DENIED in part.** Specifically, the undersigned recommends that Soni's promissory estoppel, quantum meriut, and attorneys' fees claims be **DISMISSED with prejudice** and her breach of contract and declaratory judgment claims be allowed to proceed.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED June 21, 2021

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE